THE NAVAJO NATION

Plaintiff-Appellant

vs.

DENNIS LEE BEDONIE and
LARRY A. ANDERSON

Defendants-Appellees

Decided On November 5, 1979

William E. Perry, III, Special Prosecutor, Window Rock, Arizona, for Plaintiff-Appellant

Albert Hale, Gallup, New Mexico, for Defendants-Appellees

Before WALTERS, Acting Chief Justice, BECENTI and NESWOOD, Associate Justices

NESWOOD, Associate Justice

I.

The defendant Larry Anderson was charged with criminal entry stemming from an incident at the Window Rock Tribal Park near the Tribal Administration Building. Anderson was arrested on November 28, 1978, and charged with obstructing a police officer. That charge was subsequently dismissed with prejudice by the Chinle District Court upon motion of the Prosecutor. The complaint for criminal entry was then filed on March 12, 1979.

On April 20, 1979, both defendants were charged with several counts of unlawful imprisonment, aggravated assault, burglary and conspiracy based upon an incident which occurred on November 13, 1978. At that time, the defendants were involved in a "take-over" of

the Tribal Administration Building. The defendants were initially arrested by Navajo police officers, but were immediately remanded to the custody of the Federal Bureau of Investigation when a decision was made to charge them in federal court.

Federal charges were dismissed upon motion of the United States Attorney on November 19, 1979, but the Prosecutor maintains he was not notified of that fact until sometime in December.

On July 2, 1979, the defendants made motions to dismiss all charges on the grounds that they were not afforded a speedy trial.

A hearing on the motion was held on July 9, 1979, the Honorable Jerome McCabe presiding. Counsel for the defendants called no witnesses to support his claim that the defendants had been prejudiced by the delay in trial because they had forgotten many of the events due to the passage of time.

The Window Rock District Court dismissed the charges that same day finding no valid reason for the delay in filing charges and that the defendants had forgotten the events on which the charges were filed.

In reaching its decision that the defendants had forgotten events, the Court apparently relied on witnesses called at a prior hearing involving co-defendants of Bedonie and Anderson. At that

prior hearing, witnesses had been called to demonstrate a lack of their personal memories about the events occurring on November 13, 1978. Judge McCabe had presided over that hearing as well and had dismissed the charges for failure to afford those defendants a speedy trial and finding prejudice to those defendants due to a loss of memory.

The Prosecutor made no objection to the judge taking this other testimony into account although he was aware that the judge was doing so.

The Prosecutor filed these appeals on August 8, 1979. Appellant argued that speedy trial did not apply and that even if it did, no prejudice to the defendants had been shown because of their failure to call witnesses at their hearing. Appellant maintained that Bedonie and Anderson could not rely on evidence presented at a hearing involving other defendants and that in any event, Anderson had demonstrated a good memory at that time.

The appeals were consolidated for the purpose of the appellate hearing due to the identity of issues.

II.

Two issues are raised by this appeal:

1. Can the appellant now object to the use of evidence from another hearing when he failed to object at the District Court level?

2. Were the defendants denied their right to a speedy trial?

III.

At the hearing on defendants' motion to dismiss for failure to provide a speedy trial, all parties were aware that the judge was being asked to and was considering evidence from a prior hearing involving co-defendants. Yet the appellant failed to object to this.

The failure to timely object to the admission or rejection of evidence amounts to a waiver of the right to claim error in the future:

> Thus the case was decided not only upon what was alleged in the pleadings but upon other allegations as well, as to which no clear inkling appears in the record. Because the Court of Claims considered these additional allegations, it is urged that we should also consider them. But we cannot consider such allegations in determining the sufficiency of the cause stated. After all, pleadings and the making of a proper record have not been dispensed with. They still have a function to perform. This case points up that function. We will not review questions not clearly raised on the record.
>
> Standard-Vacuum Oil Company vs. United States, 339 U.S. 157, 70 S.Ct. 545, 94 L.Ed. 731 at 733 (1950).

The Supreme Court of Arizona has spoken many time on this issue:

> We have repeatedly held that matter which were not raised in the lower court will not be considered as grounds for reversal in this Court.
>
> State vs. Washington, 103 Ariz. 605, 447 P.2d 863 at 865 (1968)

We need not consider, however, whether the comments were so prejudicial that they constitued reversible error because the defendant's failure to object during or just after the closing arguments consituted a waiver of any right to review on appeal.

State vs. Owens, 112 Ariz. 223, 540 P.2d 695 at 700 (1975)

See also State vs. Hernandez, 96 Ariz. 28, 391 P.2d 586 (1964); Mong Ming Club vs. Tang, 77 Ariz. 63, 266 P.2d 1091 (1954); Bruno vs. San Xavier Rock & Sand Company, 76 Ariz. 250, 263 P.2d 308 (1953).

The Court of Appeals of the Navajo Nation has clearly stated its agreement with the Supreme Court of Arizona in no uncertain terms:

Issues not raised at the trial below are not "appealable".

Gudac vs. Marianito, 1 Nav.R. 385 at 394 (1978)

We hold that failure to object to matters raised in a lower court will constitute a waiver of any right to review on appeal.

In considering the second issue presented to us, we must therefore accept the District Court's finding that Bedonie and Anderson had forgotten many of the events on which the charges were filed.

IV.

The Navajo Tribal Code does not specify what is meant by "speedy trial". 1 N.T.C. 6 provides:

§ 6. Rights of accused

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, and shall be informed of the nature and cause of the accusation; shall be confronted with the witnesses against him; and shall have compulsory process for obtaining witnesses in his favor.

Additionally, the Courts of the Navajo Nation are bound by the requirements of the 1968 Indian Civil Rights Act concerning speedy trial which reads:

No Indian Tribe in exercising powers of self government shall...
(6) deny any person in a criminal proceeding the right to a speedy and public trial...

The leading case on the right to a speedy trial is United States vs. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In its applicable portion, Marion states:

Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety

in him, his family and his friends. These considerations were substantial underpinnings for the decision in Klopfer v. North Carolina [citations omitted]. So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provisions of the Sixth Amendment.

Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusations: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprieve the defendant of witnesses, and otherwise interfere with his ability to defend himself.

30 L.Ed.2d at 478

It is clear from a close reading of Marion that the right to a speedy trial attaches at the time of arrest and need not await a formal charge. Therefore, in regards to the incident at the Window Rock Tribal Park, Anderson's speedy trial right attached on November 28, 1978 - the day he was arrested.

The incident occurring on November 13, 1978, is less clear. The defendants were charged by the federal authorities at the time of the arrest. It is thus arguable that the speedy trial provisions only applied to the United States government and that the defendants had never formally been accused by the Navajo Nation. That would mean that the speedy trial argument of the defendants would not apply.

However, this Court believes that by having the defendants arrested by Navajo police officers, the defendants were in fact restrained in the manner contemplated by Marion and the provisions of speedy trial attached to the Navajo Nation as well.

This Court notes that the Navajo Nation might have avoided this problem by charging the defendants simultaneously to the federal charges. This procedure is permitted according to United States vs. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). While policy arguments exist that charges by two separate sovereigns for the same incident might be unfair to the defendant, in situations where this is permitted, it seems fairer than leaving the defendant up-in-the-air later on.

The appellants explanation that a delay in filing charges was necessitated by the need to employ a competent attorney to proceed with this matter is unacceptable to this Court. We do not believe that all of the other prosecutors then employed by the Prosecutor's Office of the Navajo Nation were unqualified to proceed with this case. If they were, we must question why they continue to be employed and continue to be allowed to present cases on behalf of the Navajo Nation.

We therefore rule that the arrests of the defendants on November 13th and the arrest of the defendant Anderson on November 28th caused the provisions of speedy trial to attach.

V.

Once ascertaining that the provisions of speedy trial apply, it is necessary to examine whether or not the right has actually been violated.

The test for violation of this right is contained in Barker vs. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and is said to consider:

1. Length of delay

2. The reason for the delay

3. The defendant's assertion of his right

4. Prejudice to the defendant

VI.

The length of delay in this case was three and a half months for the charge resulting from the Tribal Park incident and five months for the Administration Building incident. While this is not necessarily a lengthy delay in the federal and in some state systems, this length of time is substantial in the Navajo Nation.

VII.

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in

order to hamper the defense should be
weighed heavily against the government.
A more neutral reason such a negligence
or overcrowded courts should be weighed
less heavily but nevertheless should be
considered since the ultimate responsibility
for such circumstances must rest with the
government rather than with the defendant.
Finally, a valid reason, such as a missing
witness, should serve to justify appropriate
delay.

Barker vs. Wingo, 33 L.Ed.2d at 117

The appellant stated in his arguments to this Court that the matter had been deliberately delayed in order to find a qualified prosecutor. While we do not believe that the delay was made with the express intent to hamper the defense, it is none-the-less of a serious nature.

VIII.

The third factor to be considered is the defendants' assertion of their right to a speedy trial.

The defendants were arraigned on May 25, 1979. Their motions to dismiss were filed on July 2, 1979, approximately twenty-eight days before the time set for trial.

This Court notes that Rule 9(a) of the Rules of Criminal Procedure provides:

a) The Motion to Dismiss. At any time
before trial the defendant may move to dis-
miss the action on the grounds of insufficiency

-140-

of the complaint, lack of jurisdiction or
failure of the complaint to charge a crime
or on any other defense or objection which
can be decided without trial of the general
issue. The motion shall be in writing unless
made in open court at the time o the hearing
and shall move for dismissal or for other
appropriate relief. The motion shall contain
a certificate of service on the prosecutor.

Thus, the defendants complied with the court rules. This Court believes that the defendants' assertion of their rights were timely and as rapid as one might expect.

IX.

We stated earlier in this opinion that the District Court's finding of prejudice to the defendants must be upheld for failure of the appellant to timely object.

The analysis of this factor by the United States Supreme Court in the Barker case is enlightening:

Prejudice, of course, should be assessed in
the light of the interests of defendants which
the speedy trial right was designed to pro-
tect. This Court has identified three such
interests: (i) incarceration; (ii) to min-
imize anxiety and concern of the accused;
and (iii) to limit the possibility that the
defense will be impaired. Of these, the
most serious is the last, because the in-
ability of a defendant to prepare his
case skews the fairness of the entire
system. If witnesses die or disappear
during a delay, the prejudice is ob-
vious. There is also prejudice if
defense witnesses are unable to recall
accurately events of the distant past.
Loss of memory, however, is not always

> reflected in the record because what has
> been forgotten can rarely be shown.

> 33 L.Ed.2d at 118

Thus, the failure to actually call the defendants to testify about loss of memory in and of itself would not be sufficient reason to reverse this decision. Additionally, the lack of memory of witnesses other than the defendants must be considered by the court.

X.

> We regard none of the four factors identified
> above as either a necessary or sufficient
> condition to the finding of a deprivation of
> the right to speedy trial. Rather, they are
> related factors and must be considered to-
> gether with such other circumstances as may
> be relevant. In sum, these factors have no
> talismanic qualities; courts must still engage
> in a difficult and sensitive balancing process.

> Barker vs. Wingo, 33 L.Ed.2d at 118

In considering and balancing these four factors, we find that the delay cause to the defendants was prejudicial. We further find that the delay, while not lengthy by some standards, was considerable and must be weighed against the appellant.

We therefore believe that the defendants' right to a speedy trial was denied them and must result in a dismissal of the charges against them.

XI.

We have engaged in this lengthy discussion of speedy trial in an attempt to guide our Courts in the future. However, it would be particularly helpful if legislation were passed specifying time periods in criminal proceedings. In that manner, future problems can be curtailed and consistency guaranteed.

We recognize that federal laws and case decisions are not what is always best for our people. But until we are provided with other law, we must turn to those laws and decisions for guidance. It is our belief that our people deserve no less than that guaranteed to citizens of the various states.

XII.

The decision of the Window Rock District Court, dismissing the charges against both defendants, is AFFIRMED.

WALTERS, Acting Chief Justice and BECENTI, Associate Justice, concur.