212 P.3d 17

**Tamula S. BOGARD, a single woman, Plaintiff/Appellee,**

**v.**

**CANNON & WENDT ELECTRIC CO., INC., an Arizona corporation, Defendant/Appellant.**

**No. 1 CA–CV 06–0556.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 27, 2009.

6. Now codified at A.R.S. § 13–604(W)(3)(b) and (c). 15

Wilmer Messer & Testini PLC, By Charles
Mark Wilmer, Jr. and James W. Hill Ltd. By

James W. Hill, Phoenix, Attorneys for Plaintiff/Appellee.

Ellis & Baker PC, By Teresa H. Foster, Phoenix Attorneys for Defendant/Appellant.

## OPINION

THOMPSON, Judge.

¶ 1 Defendant/appellant Cannon & Wendt Electric Co., Inc. (C & W) appeals a judgment in favor of plaintiff/appellee Tamula S. Bogard on Bogard's claims of gender-based discrimination and retaliation. For the following reasons, we vacate the portion of the judgment awarding Bogard damages for mental pain and suffering and affirm the remainder of the judgment as modified herein.

## FACTUAL AND PROCEDURAL HISTORY

### A. Bogard's employment with C & W

¶ 2 Bogard was employed by C & W as an electrician from approximately March 1997 until October 1999. On August 13, 1999, Bogard filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that C & W failed to promote her to a general foreman position because of her gender. Shortly after Bogard filed that first charge of discrimination, C & W transferred Bogard to another job site and reduced her rate of pay from the foreman rate to that of a journeyman-wireman. On August 30, 1999, Bogard filed a second charge of discrimination alleging that C & W had retaliated against her for filing her original gender discrimination charge. On October 26, 1999, Bogard was terminated by C & W. Following her termination, Bogard filed a third charge of discrimination with the EEOC alleging that her discharge was further retaliation by C & W.

### B. The EEOC's reasonable cause determinations

¶ 3 The EEOC issued three determinations, one for each charge of discrimination filed by Bogard, stating that the agency had investigated the charges and had determined that reasonable cause existed to believe that C & W had discriminated against Bogard on the basis of her gender and had engaged in subsequent acts of retaliation against Bogard in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1999) (Title VII).

### C. Bogard's lawsuit

¶ 4 Bogard filed suit against C & W, alleging gender discrimination and retaliation in violation of Title VII and the Arizona Civil Rights Act (ACRA), Arizona Revised Statutes (A.R.S.) § 41–1401, et seq. (2007). Bogard also alleged that C & W's actions amounted to a tortious interference with an advantageous relationship, and she requested compensatory, punitive, and emotional distress damages.[1] C & W filed an answer denying Bogard's allegations and asserted that Bogard's pay decrease and discharge were based on legitimate business reasons unrelated to Bogard's gender.[2]

#### 1. C & W's first motion for summary judgment

¶ 5 C & W filed a motion for summary judgment, arguing that Bogard had failed to produce any evidence that C & W had discriminated against her based on her gender or that it had retaliated against her for filing her EEOC charges. C & W also argued that any back-pay award should be limited to $3,539.59 in view of Bogard's alleged failure to mitigate her damages and that Bogard should be precluded from recovering emotional distress damages or punitive damages. Bogard argued in her response that the EEOC's reasonable cause determinations and other evidence that she presented creat-

1. Bogard acknowledges that she did not pursue her claim for tortious interference in the trial court, and it is not at issue on appeal.

2. C & W also filed a counterclaim alleging that Bogard had been unjustly enriched by inadvertent wage overpayments. C & W ultimately did not pursue the counterclaim, and it is not at issue in this appeal.

ed genuine issues of material fact sufficient to defeat summary judgment.

¶ 6 Following oral argument, the trial court granted summary judgment to C & W on the discrimination claim, emotional distress damages claim, and punitive damages claim. Related to its ruling on the discrimination claim, the trial court determined that the EEOC's determinations were not "admissible evidence of the alleged discrimination" and could not "be used at trial or in [connection with the summary judgment] motion to prove the claims of discrimination." The trial court denied summary judgment on Bogard's retaliation claims but found that Bogard had failed to mitigate her damages by refusing to seek other employment for certain periods.[3]

## 2. Submission of the retaliation claims on stipulated facts

¶ 7 The trial court set the remainder of the case for trial. In anticipation of trial, C & W filed motions in limine seeking the exclusion of (1) the EEOC's reasonable cause determinations, (2) any evidence or argument concerning Bogard's alleged emotional distress damages, and (3) any evidence or argument concerning retaliation, other than the temporal proximity between the filing of Bogard's EEOC charges and her discharge.[4] C & W also filed a motion for partial reconsideration of Bogard's remaining retaliation claims. The trial court denied that motion.

¶ 8 Prior to the scheduled trial date, the parties submitted a stipulation of facts "for the purpose of allowing the [c]ourt the necessary evidence to determine whether" C & W was entitled to summary judgment on Bogard's remaining retaliation claims. The parties also filed memoranda on that issue. The trial court issued a minute entry consisting of its findings of fact and a ruling in favor of C & W on the retaliation claims. The trial court subsequently entered a signed judg-

ment dismissing Bogard's claims with prejudice and awarding C & W its costs.

## 3. Bogard's appeal of the discrimination and retaliation rulings

¶ 9 Bogard timely appealed the trial court's summary judgment in favor of C & W. On appeal, Bogard argued that the trial court erred when it granted summary judgment to C & W because the trial court (1) failed to follow established case law regarding Bogard's burden of proof, (2) refused to admit the EEOC's reasonable cause determinations, and (3) erred by weighing the evidence and finding facts when granting C & W's motion for summary judgment. C & W argued that the trial court properly granted its motion for summary judgment on both the discrimination and retaliation claims because Bogard failed to produce admissible evidence to prove the existence of a genuine issue of material fact, and the EEOC's reasonable cause determinations were insufficient to defeat C & W's motion for summary judgment.

¶ 10 With respect to Bogard's discrimination claim, this court noted that our supreme court had recently articulated the appropriate standard for evaluating the admissibility of EEOC reasonable cause determinations in *Shotwell v. Donahoe*, 207 Ariz. 287, 288–89, ¶ 1, 85 P.3d 1045, 1046–47 (2004). *See Bogard v. Cannon & Wendt Elec. Co., Inc.*, 1 CA–CV 04–0489 at ¶ 28 (Ariz.App. Mar. 24, 2005) (mem. decision). Due to the fact that the EEOC's reasonable cause determinations in this case "appear[ed] to be probative," but the trial court "did not have the opportunity to determine the[ir] admissibility ... consistent with the holding in *Shotwell*," we vacated the entry of summary judgment against Bogard on the discrimination claim and remanded to the trial court for "further explanation as to its determination that the EEOC findings are inadmissible." *Id.* at ¶ 34.

---

**3.** Bogard appealed the trial court's minute entry. Because the minute entry was unsigned, this court suspended the appeal for the purpose of allowing Bogard to obtain a signed order. The trial court declined to sign a final judgment, noting that its minute entry "did not resolve all matters" before it, and we dismissed the appeal for lack of jurisdiction on that basis.

**4.** Although Bogard responded to C & W's motions in limine, the trial court did not rule on those motions due to its ultimate disposition of the case by summary judgment.

¶ 11 With respect to Bogard's retaliation claim, we found that the parties' stipulation of facts essentially demonstrated that "the parties [did] not agree on the material facts of the case." *Id.* at ¶ 43. Because Bogard established a prima facie case of retaliation and raised issues of fact concerning the non-retaliatory reasons offered by C & W for its actions, we reversed the trial court's summary judgment to C & W and remanded to the trial court for further proceedings. *Id.* at ¶¶ 43, 50. We also vacated the trial court's award of costs to C & W. *Id.* at ¶ 50.

## 4. Pretrial motions

¶ 12 The case was reassigned from Judge Rebecca A. Albrecht to Judge Robert Houser, who set the case for a jury trial.[5] In accordance with the trial court's instructions limiting each party to one motion in limine, C & W filed a consolidated motion seeking the exclusion of evidence or argument concerning emotional distress damages, punitive damages, damages that were not mitigated, and the EEOC's reasonable cause determinations, among other evidence.[6] C & W argued that the EEOC's reasonable cause determinations were irrelevant and unfairly prejudicial and that the trial court's earlier damages ruling became the "law of the case" when Bogard failed to challenge that ruling in her appeal. C & W also filed a renewed motion for summary judgment on Bogard's discrimination claim, requesting that the trial court "grant summary judgment on [that] claim again and explain why the EEOC findings are inadmissible."

¶ 13 The trial court held oral argument on C & W's pretrial motions. At that time, the trial court expressed the following view regarding the procedural posture of the damages-related issues:

There wasn't anything left in this case. I don't know what was interlocutory about anything. Case then went up on appeal from the granting of summary judgment. Nobody appealed the granting of summary judgment on the punitive damages, emotional distress and such. The only thing[s] that was repealed [sic], apparently, were the rulings on retaliation [and] discrimination. Those rulings were reversed. That's where we are now, isn't it?

The trial court took C & W's motion in limine and renewed motion for summary judgment under advisement. Shortly thereafter, Bogard filed a motion with the trial court indicating that she was "approaching the trial of [the] case on a de novo basis," and "intend[ed] to present evidence on mental pain, suffering and anxiety." According to Bogard, Judge Albrecht's earlier damages ruling was not the law of the case because it was interlocutory in nature and could not have been appealed.

¶ 14 Having considered the parties' respective arguments, the trial court denied C & W's renewed motion for summary judgment and motion in limine. With respect to Bogard's discrimination claim, the trial court found that "[a]fter balancing the probative value of the [EEOC's reasonable cause determinations] against the risk of unfair prejudice, ... [those determinations] constitute admissible evidence" and created a genuine issue of material fact precluding summary judgment. Although the trial court denied C & W's motion in limine to exclude reference to the EEOC's reasonable cause determinations, it did indicate that C & W could request a limiting instruction or redaction if appropriate. With respect to Bogard's alleged damages, the trial court concluded, in relevant part:

Defendant has also moved in limine to limit Plaintiff's evidence of damages based upon Judge Albrecht's prior grant of summary judgment. In its order dated February 14, 2002, the Court found that "[t]here is insufficient evidence for a jury to determine that the plaintiff is entitled to recover for emotional distress or punitive damages." Accordingly, the Court granted

---

5. On remand, Bogard requested a change of judge pursuant to Arizona Rule of Civil Procedure 42(f). The case was reassigned from Judge Rebecca A. Albrecht to Judge Michael J. O'Melia on June 29, 2005 and later reassigned a second time to Judge Houser on August 29, 2005.

6. C & W indicated that its "consolidated" motion in limine was intended to replace the three motions in limine it had filed previously.

Defendant's Motion for Summary Judgment on the claims of discrimination in promotion practices, emotional distress damages and punitive damages and further ruled that "plaintiff did fail to mitigate her damages." The Court subsequently ruled against Plaintiff on her retaliation claims as well. On appeal, the court of appeals reversed the grant of summary judgment on "all claims" and remanded "for further proceedings consistent with this opinion." The opinion is silent with respect to the trial court's grant of summary judgment on emotional distress damages, punitive damages and mitigation. However, the general rule is that a reversal of a judgment without instructions restores the parties to the same position as if the judgment had never been rendered. *Tucson Gas & Electric Co. v. Superior Court,* 9 Ariz.App. 210, 213[, 450 P.2d 722, 725] (1969). Moreover, upon remand, the doctrine of law of the case "does not prevent a judge from reconsidering non-final rulings, '[n]or does it prevent a different judge, sitting on the same case, from reconsidering the first judge's non-final rulings.'" *Zimmerman v. Shakman,* 204 Ariz. 231, 236[, 62 P.3d 976, 981] (App.2003). Finally, the court's broad directive reversing summary judgment on "all claims" is consistent with the conclusion that the court did not intend to limit the damages that Plaintiff could try to prove on remand.

¶ 15 C & W filed a motion for reconsideration of the trial court's ruling on the damages issues, arguing that it had improperly granted Bogard a horizontal appeal and that Bogard had failed to disclose any evidence supporting her claim for damages in any event. C & W also requested that the trial court briefly continue the scheduled trial for the purpose of "allow[ing] the pretrial statement to be amended, witnesses to be added and jury instructions to be supplemented." The last business day before the trial was scheduled to begin, C & W filed a motion to dismiss or continue trial, arguing that Bogard's claims should be dismissed due to her failure to comply with pretrial deadlines or, alternatively, that the trial should be continued. Trial was not continued.

### 5. Jury verdict and award of attorneys' fees

¶ 16 At the conclusion of Bogard's case-in-chief, C & W moved for a directed verdict on Bogard's substantive claims as well as emotional distress damages and punitive damages. The trial court granted the motion with respect to Bogard's claim for punitive damages but denied the motion as to her other claims.

¶ 17 The jury returned a verdict in favor of Bogard and awarded $395,000 in compensatory damages and $10,000 in lost earnings. The trial court reduced the compensatory damages amount to $300,000 in accordance with the statutory cap on damage awards set forth in 42 U.S.C. § 1981a(b)(3) (2000). In addition, the trial court awarded Bogard attorneys' fees in the amount of $221,075.

¶ 18 The trial court entered judgment awarding Bogard $300,000 for "mental pain and suffering," $10,000 for lost wages, $221,075 in attorneys' fees, and $2,581.09 in costs. C & W timely appealed.

### DISCUSSION

¶ 19 On appeal, C & W claims that the trial court erred by (1) permitting Bogard to introduce evidence and argument during trial concerning her alleged emotional distress and unmitigated damages, (2) failing to follow this court's mandate concerning the EEOC's reasonable cause determinations, and (3) awarding Bogard attorneys' fees despite alleged deficiencies in her fee application.

### A. The trial court's ruling regarding damages

■■■ ¶ 20 C & W argues that Judge Houser erred by denying C & W's motion in limine with respect to damages because his decision in that regard failed to treat Judge Albrecht's earlier ruling as law of the case [7]

---

7. The law of the case doctrine refers to the judicial policy of refusing to reopen questions previously decided in the same case by the same court or an appellate court. *Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II,* 176 Ariz.

and effectively permitted a horizontal appeal.[8] A trial court's rulings on the exclusion or admission of evidence will not be disturbed on appeal unless a clear abuse of discretion or legal error appears and prejudice results. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982) (citations omitted); *see also Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7, 977 P.2d 807, 810 (App.1999) (citation omitted).[9] We also review a trial court's reconsideration of an earlier ruling for an abuse of discretion. *See State v. King*, 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994).

¶ 21 It is undisputed that Bogard did not challenge Judge Albrecht's damages ruling in her earlier appeal, and this court's memorandum decision is silent with respect to damages. Nevertheless, Bogard argues that this court's directive reversing summary judgment on "all claims" obligated the trial court to proceed with the case on a de novo basis and entitled Judge Houser to revisit the damages ruling. According to Bogard, the memorandum decision "swe[pt] the whole case clean."

¶ 22 The trial court relied upon *Tucson Gas & Electric* for the proposition that a reversal of a judgment without instructions restores the parties to the same position as if the judgment had never been rendered. 9 Ariz.App. at 213, 450 P.2d at 725 ("Upon a reversal, without instructions, generally a new trial is required."). We believe that the trial court interpreted our directive upon remand more broadly than we intended.

¶ 23 In the memorandum decision, we specifically identified the issues on appeal, all of which related to Bogard's substantive discrimination and retaliation claims, and we addressed them individually in view of the fact that "the trial court [had] disposed of ... [those] claims separately." *Bogard*, 1 CA–CV 04–0489 at ¶ 17. With respect to the retaliation claim, we reversed summary judgment and remanded for further proceedings because we determined the trial court had improperly made factual determinations. *Id.* at ¶ 50. With respect to the discrimination claim, we "vacate[d] the entry of summary judgment against Bogard ... and remand[ed] to the trial court for further explanation as to its determination that the EEOC findings [were] inadmissible." *Id.* at ¶ 34. In closing, we instructed the trial court to conduct "further proceedings *consistent with this decision.*" (Emphasis added.) *Id.* at ¶ 52.

▪ ¶ 24 Our reversal of summary judgment on the substantive discrimination and retaliation claims thus was not a general reversal without instructions, as the trial court apparently believed, but rather was limited to the issues raised by Bogard and ruled upon in the memorandum decision. Because Bogard failed to challenge Judge Albrecht's damages ruling in her appeal, that ruling was, by implication, affirmed. *See Thompson v. Better–Bilt Aluminum Prods. Co., Inc.*, 187 Ariz. 121, 126, 927 P.2d 781, 786 (App.1996) (citation omitted) ("Without more, we deem [appellant's] ... unraised issues affirmed on first appeal."). As our supreme court has explained:

> [A]ppeals cannot be allowed by piecemeal. There must be an end to them as speedily as the contention of litigants may be advanced and decided. So it is that all questions reserved for review by an Appellate Court must be presented on the first appeal thereafter from a final judgment, or not at all; for thereafter all questions presented by the record will be considered as finally determined and all such questions not expressly affirmed or reversed will, by implication, be deemed affirmed.

*Arizona–Parral Mining Co. v. Forbes*, 16 Ariz. 395, 402, 146 P. 504, 506 (App.1915) (internal quotation marks and citation omitted); *Paramount Pictures, Inc. v. Holmes,*

---

275, 278, 860 P.2d 1328, 1331 (App.1993) (citations omitted).

**8.** A horizontal appeal occurs when a party "requests a second trial judge to reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies

reconsideration." *Powell–Cerkoney*, 176 Ariz. at 278–79, 860 P.2d at 1331–32 (citation omitted).

**9.** C & W correctly notes that we review any purely legal issues de novo. *See Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, 201, ¶ 8, 129 P.3d 487, 490 (App.2006) (citations omitted).

58 Ariz. 1, 4, 117 P.2d 90, 91 (1941) (appeals from a judgment cannot be taken piecemeal, and questions that could have been raised on the first appeal cannot be presented or considered on a later appeal).

¶ 25 To the extent that Bogard contends that Judge Albrecht's damages ruling was merely interlocutory in nature and "never became appealable," we note that her appeal was taken from a final judgment signed and entered by the trial court. Bogard's civil appeals docketing statement indicated that the judgment "dispose[d] of all claims and all parties." Moreover, Bogard *did* appeal the trial court's ruling on her discrimination claim, which is set forth in the same minute entry as the damages ruling. It is clear that, when the trial court entered its judgment, the damages ruling, like its ruling on the discrimination claim, became final and appealable.[10]

 ¶ 26 It is well settled that "a superior court judge has no jurisdiction to review or change the judgment of another superior court judge when the judgment has become 'final.'" *Davis v. Davis*, 195 Ariz. 158, 161, ¶ 11, 985 P.2d 643, 646 (App.1999) (citation omitted); *see also Lemons v. Superior Court*, 141 Ariz. 502, 504, 687 P.2d 1257, 1259 (1984) (citation omitted) ("When a final judgment is involved one superior court judge has no jurisdiction to review or change the judgment of another superior court judge."); *Dunlap v. City of Phoenix*, 169 Ariz. 63, 66, 817 P.2d 8, 11 (App.1990) (citation omitted) (stating that "the trial judge has jurisdiction to reconsider [a] motion *unless the first decision was a final judgment*") (emphasis added).[11]

¶ 27 Thus, because Judge Albrecht's damages ruling was final, and no appeal was

taken from that ruling upon final judgment, Judge Houser had no jurisdiction to review or change that ruling. We conclude that he abused his discretion when he denied C & W's motion in limine to exclude evidence of damages that Judge Albrecht previously determined were unavailable to Bogard. Accordingly, we modify the judgment to award Bogard only $3,539.59 in lost wages, the maximum amount that Judge Albrecht concluded was recoverable, and vacate that portion of the judgment awarding Bogard damages for mental pain and suffering. Our resolution of this issue obviates the need to address C & W's claim that the trial court abused its discretion by denying its motion to continue the trial.

**B. The trial court's rulings regarding Bogard's discrimination claim and the admissibility of EEOC determinations**

¶ 28 Next, C & W argues that Judge Houser erred by denying its renewed motion for summary judgment on Bogard's discrimination claim and by permitting Bogard to introduce the EEOC's reasonable cause determinations at trial. C & W claims that Judge Houser ignored this court's mandate to provide "further explanation as to [the earlier] determination that the EEOC findings are inadmissible" and "[i]n effect ... granted another horizontal appeal of Judge Albrecht's grant of summary judgment on the discrimination claim[ ]."

**1. Denial of the renewed motion for summary judgment**

 ¶ 29 We note initially that the denial of a summary judgment motion generally is not reviewable on appeal from a final judgment entered after a trial on the merits. *See*

---

**10.** While Bogard correctly notes that we dismissed her first appeal of the trial court's minute entry granting summary judgment on her discrimination claim and the damages issues, those rulings became final and appealable upon the trial court's entry of a signed judgment following the dismissal of Bogard's retaliation claims. *See Pepsi–Cola Metro. Bottling Co., Inc. v. Romley*, 118 Ariz. 565, 568, 578 P.2d 994, 997 (App.1978) (noting that appellant's timely appeal from a final judgment of the trial court "properly placed before [this court] the propriety of all prior non-appealable orders").

**11.** We acknowledge that the law of the case doctrine "does not prevent a judge from reconsidering nonfinal rulings, nor does it prevent a different judge, sitting on the same case, from reconsidering the first judge's prior, nonfinal rulings." *See Zimmerman*, 204 Ariz. at 236, ¶ 15, 62 P.3d at 981 (internal quotation marks and citation omitted). However, Judge Albrecht's damages ruling in this case was a final ruling.

*Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.,* 12 Ariz.App. 424, 428, 471 P.2d 309, 313 (1970); *see also John C. Lincoln Hosp. & Health Corp. v. Maricopa County,* 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App.2001); *Strojnik v. General Ins. Co. of America,* 201 Ariz. 430, 433, ¶ 11, 36 P.3d 1200, 1203 (App. 2001) (denial of summary judgment order ordinarily not reviewable on appeal after the entry of final judgment, but we may review the ruling when the motion was denied on a point of law). Moreover, while C & W did move for a directed verdict at the conclusion of Bogard's case-in-chief, it has not challenged the trial court's denial of that motion on appeal, and we deem any issues related to that ruling waived. *See Childress Buick Co. v. O'Connell,* 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App.2000) (citation omitted) ("Our policy, and the policy of most appellate courts, is that issues not clearly raised in appellate briefs are deemed waived."). Thus, we decline to consider C & W's argument that the trial court "committed error by denying [its] Motion for Summary Judgment."

## 2. Compliance with mandate

¶ 30 On remand, a trial court must "strictly follow" the mandate of an appellate decision. *In re Marriage of Molloy,* 181 Ariz. 146, 149, 888 P.2d 1333, 1336 (App. 1994) (citation omitted); *see also Tucson Gas & Electric,* 9 Ariz.App. at 213, 450 P.2d at 725 (citation omitted) ("the trial court's jurisdiction on remand is delimited by the terms of the mandate"). We review de novo whether the trial court followed the appellate court's mandate. *Id.*

¶ 31 In our memorandum decision, we vacated the entry of summary judgment on Bogard's discrimination claim and instructed the trial court to provide further explanation concerning the grounds on which it excluded the EEOC reasonable cause determinations from consideration. *Bogard,* 1 CA–CV 04–

0489 at ¶ 34. We noted that the supreme court's decision in *Shotwell,* 207 Ariz. at 295, ¶ 33, 85 P.3d at 1053, issued after Judge Albrecht's ruling on the EEOC determinations, specifically requires a trial court excluding such evidence to set forth its reasons for doing so in order to permit effective appellate review. *Bogard,* 1 CA–CV 04–0489 at ¶ 32. Because Judge Albrecht did not have the benefit of reviewing the *Shotwell* decision at the time of making that original ruling and had "failed to explain why" she determined that the EEOC's findings were inadmissible, we remanded for further explanation. *Id.* at ¶ 34.

¶ 32 On remand, Judge Houser concluded that "[a]fter balancing the probative value of the evidence against the risk of unfair prejudice," the EEOC's determinations constituted admissible evidence pursuant to *Shotwell.* Having considered the EEOC's determinations within the framework established by the supreme court, we do not find that Judge Houser deviated from what we instructed the trial court to do.

## 3. Denial of motion in limine[12]

¶ 33 Even if our memorandum decision had not expressly permitted Judge Houser to reconsider the admissibility of the EEOC's reasonable cause determinations, we would not agree with C & W that his ruling on that issue was a prohibited horizontal appeal of Judge Albrecht's earlier decision. While a trial court generally should not reconsider a motion previously decided by another judge in the absence of new circumstances, *Union Rock & Materials Corp. v. Scottsdale Conference Center,* 139 Ariz. 268, 272, 678 P.2d 453, 457 (App.1983) (citations omitted), an intervening appellate court decision, such as *Shotwell,* is a new circumstance that may justify reconsideration of an earlier ruling by a different trial judge, *see Lemons,*

12. We reject Bogard's argument that C & W waived any evidentiary objection to the EEOC determinations by stipulating to their admission at trial. C & W preserved its objection by filing a motion in limine, and we do not believe that a stipulation to the admission of evidence following an adverse ruling on the admissibility of the evidence waives the right to appellate review. *See Gibson v. Gunsch,* 148 Ariz. 416, 417, 714

P.2d 1311, 1312 (App.1985) (citation omitted) ("A properly filed motion in limine preserves appellant's objections on appeal without need for further objection if it sets forth specific grounds for the objections."); *Bell v. State,* 143 Ariz. 305, 310, 693 P.2d 960, 965 (App.1984) (citation omitted) ("Once the trial court ruled that ... evidence was admissible ... no further objection by [appellant] would have served any purpose.").

141 Ariz. at 504, 687 P.2d at 1259 ("the respondent judge was acting within his jurisdiction and sound discretion in reviewing [an issue previously ruled upon by another judge] anew in light of the [intervening] appellate decision on the same point"); *see also Dunlap,* 169 Ariz. at 66, 817 P.2d at 11 (noting that newly decided case law may provide a proper basis for reconsideration of an earlier ruling by the same court).

¶ 34 Prior to *Shotwell,* many trial courts in Arizona followed Ninth Circuit case law, which made EEOC reasonable cause determinations automatically admissible in Title VII litigation. *See, e.g., Plummer v. Western Int'l Hotels Co., Inc.,* 656 F.2d 502, 505 (9th Cir.1981). In *Shotwell,* our supreme court specifically rejected the Ninth Circuit's per se rule, finding instead that EEOC reasonable cause determinations are subject to the same tests for admissibility as any other evidence. 207 Ariz. at 290, ¶ 8, 85 P.3d at 1048.

¶ 35 The supreme court noted that EEOC determinations are "assumed to be trustworthy and therefore admissible hearsay" because they constitute the "embodiment of the conclusions of 'an investigation made pursuant to authority granted by law.'" *Id.* at 294–95, ¶ 28, 85 P.3d at 1052–53 (citation omitted). It further observed that EEOC reasonable cause determinations can "certainly [be] probative of matters at issue" in discrimination and retaliation cases. *Id.* at 296, ¶ 35, 85 P.3d at 1054.[13]

¶ 36 Despite the inherent reliability and relevance of EEOC determination letters, however, the supreme court held that a trial court may determine, under the facts of each case, whether EEOC determinations are admissible by applying other evidentiary rules. *Id.* at ¶ 36. Specifically, the court noted that Arizona Rule of Evidence 403 allows a judge

to exclude otherwise admissible evidence if such evidence presents a danger of unfair prejudice, confusion of the jury, or waste of time that substantially outweighs its probative value. *Id.* at 295–96, ¶¶ 32–36, 85 P.3d at 1053–54 (citations omitted). However, the court held that, if a trial court excludes a reasonable cause determination, it must set forth its reasons for doing so to permit effective review of that determination by an appellate court. *Id.* at ¶ 33.

¶ 37 The change in law effected by the *Shotwell* decision justified Judge Houser's reconsideration of Judge Albrecht's earlier ruling concerning the admissibility of the EEOC's reasonable cause determinations. Thus, we find that Judge Houser was acting within his authority and discretion and did not conduct an impermissible horizontal appeal when he revisited that issue. Therefore, Judge Houser did not abuse his discretion in coming to the conclusion that he did by permitting the EEOC findings to come in.

## C. The trial court's award of attorneys' fees

¶ 38 Finally, C & W appeals the trial court's award of attorneys' fees to Bogard in the amount of $221,075. According to C & W, Bogard's fee application was deficient because it did not disclose any fee agreement between Bogard and her counsel and many of the time entries were improperly "reconstructed" after the fact by Bogard's counsel.[14]

¶ 39 We review the trial court's award of attorneys' fees for an abuse of discretion. *See Charles I. Friedman, P.C. v. Microsoft Corp.,* 213 Ariz. 344, 350, ¶ 17, 141 P.3d 824, 830 (App.2006) (citation omitted). "To find an abuse of discretion, there must either be no evidence to support the [trial]

---

13. In view of the supreme court's observation in this regard, we must reject C & W's broad contention that EEOC reasonable cause determinations are necessarily irrelevant because they are "merely ... pre-lawsuit procedural finding[s] that conciliation efforts are warranted" and are "not probative of ... whether the defendant-employer in fact committed discrimination."

14. To the extent that C & W alleged in its opening brief that certain time expended by co-coun-

sel was unnecessary, it conceded in its reply brief that co-counsel conducted the examination of a key witness at trial, and it has not identified any specific time entries that it claims were unnecessary or duplicative. Neither the trial court nor this court has an obligation to search the record to determine whether any of the time expended was duplicative. *See State ex rel. Corbin v. Tocco,* 173 Ariz. 587, 595, 845 P.2d 513, 521 (App.1992) (citation omitted).

court's conclusion or the reasons given by the court must be clearly untenable, legally incorrect, or amount to a denial of justice." *Id.*

¶ 40 In this case, Bogard sought fees under Title VII and the ACRA. Both statutes provide that a trial court may, in its discretion, award "a reasonable attorney's fee" to the prevailing party. 42 U.S.C. § 2000e–5(k) (2005); A.R.S. § 41–1481(J) (2007). Under both statutory schemes, "the determination of an attorney's fee award must begin with the calculation of the prevailing party's reasonable attorney's fees." *Timmons v. City of Tucson,* 171 Ariz. 350, 357, 830 P.2d 871, 878 (App.1991).

¶ 41 C & W contends that the trial court erred in making this determination despite Bogard's failure to disclose her fee agreement with counsel or to include a discussion of the agreed-upon compensation in her application for fees. While Bogard's fee application and supporting documentation did not include this information, Bogard's counsel did inform the trial court during oral argument that his agreement with Bogard was a contingent fee agreement. Apparently, in view of that representation, the trial court calculated a "lodestar figure," [15] which it "presumed to be the proper reasonable fee."

¶ 42 We do not believe that the trial court abused its discretion in this regard. In cases where fees are not paid on an hourly basis, such as contingency fee litigation, "[t]he most useful starting point for determining the amount of a reasonable fee

is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* That "lodestar" figure is presumed to be the proper, reasonable fee. *Id.* The trial court analyzed Bogard's fee application within this framework, and C & W does not identify any prejudice or harm resulting from Bogard's failure to disclose her fee agreement with counsel. [16] Thus, we decline to hold that Bogard's failure to do so constitutes reversible error.

¶ 43 C & W also contends that the trial court erred by awarding Bogard certain fees based upon "reconstructed" time entries. [17] While we have advised practitioners to "prepare their summaries based upon contemporaneous time records which indicate the work performed by each attorney from whom fees are sought," we acknowledge that contemporaneous records may not be available in every case. *See Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 188, 673 P.2d 927, 932 (App.1983). We do not believe that the trial court abused its discretion by awarding fees in the absence of such records in this case.

¶ 44 In support of the fee application, Bogard's counsel submitted an affidavit indicating that certain of his timekeeping records were destroyed by water damage when a fire occurred near the storage facility where they were kept. Because the records were no longer in existence, Bogard's counsel recreated "an [as] accurate as possible breakdown of the services [he] performed" on behalf of Bogard. In support of the fee application, Bogard also submitted the affidavit of Robert C. Hackett, who was retained to pro-

15. The lodestar is the product of the hours expended times a reasonable hourly rate of compensation. *Kadish v. Ariz. State Land Dep't,* 177 Ariz. 322, 331, 868 P.2d 335, 344 (App.1993) (citation omitted).

16. We note that the applicable statutes in this case, unlike other fee award statutes, do not limit the amount of fees awarded to the amount actually paid or agreed to be paid by the prevailing party. *See, e.g.,* A.R.S. § 12–341.01(B) (2007) ("award may not exceed the amount paid or agreed to be paid"). Rather, both Title VII and the ACRA require only that the fees awarded be "reasonable." 42 U.S.C. § 2000e–5(k); A.R.S. § 41–1481(J). Thus, we do not believe that the trial court committed reversible error by calculating the award in this case without referring to

Bogard's specific fee agreement with counsel. *See Sanborn v. Brooker & Wake Property Mgmt., Inc.,* 178 Ariz. 425, 430, 874 P.2d 982, 987 (App.1994) (rejecting argument that starting point for calculating attorneys' fee amount "should have been the ... contingency fee limit imposed by the fee agreement between appellee and her counsel").

17. According to Bogard's counsel, only the timekeeping records from 2003 and earlier were destroyed. C & W does not challenge any time entries after that time period as improper "reconstructions" or dispute that timekeeping records submitted by co-counsel were contemporaneous records that he generated by "record[ing his time] in [his] computer shortly following the moment the event occurred."

vide an opinion as to the reasonableness of the fees sought by Bogard given that certain time records were no longer in existence. Hackett opined that "the time identified in [Bogard's fee application] is ... reasonable." [18]

¶ 45 In light of the evidence before it, we cannot conclude that the trial court abused its discretion by relying upon Bogard's counsel's reconstructed timekeeping records and concluding that "the number of hours expended by counsel were reasonable," notwithstanding Bogard's counsel's inability to produce contemporaneous records. *See Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 195, 731 P.2d 84, 90 (1987) (expressing "unwilling[ness] to hold that counsel fees can never be awarded to those who work on a contingent fee basis and do not keep time records" and remanding to trial court to engage in the "factfinding process often made necessary by reconstructed records"); *see also Orfaly v. Tucson Symphony Society,* 209 Ariz. 260, 266, ¶ 22, 99 P.3d 1030, 1036 (App.2004) (rejecting challenge to "block" summaries of work performed where fee application supported reasonableness finding).

## CONCLUSION

¶ 46 For the foregoing reasons, we affirm the trial court's judgment in favor of Bogard on her substantive claims as well as the award of attorneys' fees. However, we vacate the portion of the judgment awarding Bogard damages for mental pain and suffering and modify the portion of the judgment awarding Bogard lost wages to reflect the reduced amount of $3,539.59. Bogard requests an award of attorneys' fees incurred in this appeal pursuant to 42 U.S.C. § 2000e–5(k) and A.R.S. § 41–1481(J). In the exercise of our discretion, we deny that request.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and PHILIP HALL, Judge.

---

**18.** Although C & W moved to strike Hackett's affidavit, the trial court denied that motion.