NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

CHERYL WALSH, *Petitioner/Appellant,*

*v.*

E. JEFFREY WALSH, *Respondent/Appellee.*

No. 1 CA-CV 13-0453
FILED 10-14-2014

Appeal from the Superior Court in Maricopa County
No.  FC2010-000310
The Honorable James T. Blomo, Judge

**AFFIRMED**

COUNSEL

DeCiancio Robbins, PLC, Tempe
By Christopher Robbins
*Co-Counsel for Petitioner/Appellant*

Grant Creighton & Grant, PLC, Phoenix
By Catherine A. Creighton, Kristi A. Reardon
*Co-Counsel for Petitioner/Appellant*

Franks & Houser, PC, Phoenix
By Todd Franks, Robert C. Houser, Jr., Sara A. Swiren
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

---

**J O H N S E N**, Judge:

**¶1**　　　　Cheryl Walsh ("Wife") appeals from the superior court order requiring her to reimburse E. Jeffrey Walsh ("Husband") for one-half of the mortgage payments he made on their community property home for a time when he had exclusive use of the home.　For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　The superior court entered the parties' dissolution decree on November 9, 2010.　At that time, Husband and Wife owned two homes as community property, one in Arizona and the other in California.　Both homes were listed for sale.

**¶3**　　　　The decree provided that "the parties agree that pending the sale of the Arizona Residence, Husband may exclusively occupy the Arizona Residence after allowing Wife a reasonable time to relocate."　The decree further provided that "Husband has agreed that at such time as he exclusively occupies the Arizona Residence, he shall be responsible for all the expenses associated with that residence."　The court set Wife's spousal maintenance award at $12,000 per month for 12 months and then $10,000 per month for 96 months.　In setting the award, the court found "it is reasonable to assume that Wife will incur expenses for her housing costs, including utilities, totaling approximately $5,000 per month."

**¶4**　　　　On December 3, 2010, Husband moved to amend the decree, *inter alia*, to clarify "that credit will be given to either party who pays more than their share of the legal obligations on the Arizona Residence or the California Residence."　In an order issued February 7, 2011, as relevant here, the court granted Husband's motion and amended the decree "to reflect that to the extent that Former Husband has paid more than his legal obligation toward the encumbrances on the Arizona Residence, he shall receive credit at the close of escrow."　The court also noted that "Former Husband has

2

agreed to pay the encumbrances on the Arizona Residence upon his occupying that Residence."

**¶5** On October 18, 2011, Husband moved to enforce the amended decree, seeking reimbursement for one-half of the expenses he incurred on the California residence. The court granted Husband's motion, quoting at length the language of the amended decree.

**¶6** On July 3, 2012, Husband moved to compel Wife to reimburse him for "her share of expenses related to the Arizona residence." Husband sought reimbursement for expenses he incurred on the Arizona home beginning in April 2010, when the court first ordered *pendente lite* that he be responsible for making the mortgage payments on the home, through September 2012, when the home finally sold. Wife argued Husband should not be reimbursed for any of the expenses he incurred during the *pendente lite* period or later, while he had exclusive use of the home.

**¶7** Husband's motion sought reimbursement of $79,388, roughly one-half of the expenses (including mortgage payments and other expenses) he incurred between April 2010 and June 2012. According to the record, Husband lived in the home for roughly seven months after entry of the decree. The superior court found as follows:

> **THE COURT FINDS** that Husband is entitled to reimbursement of certain expenses related to the Arizona residence.

> **THE COURT FURTHER FINDS** that neither Party is required to subsidize the other Parties [sic] utilization of the Arizona residence.

> **THE COURT FURTHER FINDS** that Husband received a benefit by living in the community asset.

> **THE COURT FURTHER FINDS** that Husband's reimbursement must be offset by his usage of the residence just as Wife was given a housing allowance when residing in the residence. Wife is not required to subsidize Husband's time in the Arizona residence.

> On February 7, 2011 Judge Reinstein clarified his Judgment/Decree in that each party [ ] had a legal obligation for one half of the encumbrances on the Arizona residence.

On April 16, 2010 Judge Reinstein set Wife's *pendente lite* spousal maintenance at $5,000.00 per month. Judge Reinstein took into account Wife's benefit of residing in the residence. Wife contends that the same principle Judge Reinstein applied to her should apply to Husband.

It is clear to the Court that Husband is overreaching in requesting reimbursement in full for his expenses for the residence.

**THE COURT FINDS** that for the period that Husband resided in the residence that he was responsible for the Fair Market Value in a similar fashion that Judge Reinstein imposed on Wife.

**THE COURT FURTHER FINDS** that Husband is requesting reimbursement for the period of time that was not contemplated by Judge Reinstein.

**THE COURT FURTHER FINDS** that Husband is entitled to reimbursement for the period from January 15, 2011 through September 2012 (one-half of $8,937.30 per month equals $4,468.65 for 7 months which equates to $31,280.55).

**IT IS ORDERED** that Wife shall reimburse Husband the amount of $31,280.55.

¶8            Wife moved for a new trial; the superior court denied the motion and Wife timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2) (2014).[1]

---

[1]      Absent material revision after the date of the events at issue, we cite a statute's current version.

## DISCUSSION

### A. Overview.

**¶9** Wife argues the order conflicts with the decree and asks us to vacate it and remand for an evidentiary hearing.[2] Husband argues Wife's appeal is improper and, in any event, the order should not be disturbed.

### B. Wife's Appeal.

**¶10** Husband challenges Wife's appeal on two grounds. First, he argues Wife waived any argument about reimbursement by failing to raise the issue in the appeal she took from the February 7, 2011 order amending the decree. *See Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 332–33, ¶ 24, 212 P.3d 17, 24–25 (App. 2009) (appeals from judgment may not be taken piecemeal; issues that could have been raised on first appeal, but were not, cannot be presented on a later appeal). We reject this argument because Wife's current appeal does not arise from the amended decree, but from the order issued May 22, 2013.

**¶11** Second, Husband argues Wife already raised the reimbursement issue in an appeal she filed, but later voluntarily dismissed, from a prior order concerning the California home. This argument also fails because that order concerned only the California home, not the Arizona home. Thus, Wife's appeal is not improper.

### C. The May 22, 2013 Order.

**¶12** Wife argues the May 22, 2013 order is internally inconsistent and conflicts with the dissolution decree. Specifically, she contends the superior court erred because, after finding "Wife is not required to subsidize Husband's time in the Arizona residence," the court then ordered her "to do exactly that – reimburse and subsidize Former Husband for the period of

---

[2] Among other arguments, Wife contends Husband's motion to compel reimbursement was an impermissible "horizontal appeal." *See Powell-Cerkoney v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278–79, 860 P.2d 1328, 1331–32 (App. 1993) ("A party seeks a 'horizontal appeal' when it requests a second trial judge to reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration."). We do not address this argument because Wife did not raise it at the superior court. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109, ¶ 17, 158 P.3d 232, 238 (App. 2007).

time that he and his new wife lived in and had exclusive use of the Arizona Residence."

¶13 We review the superior court's order for an abuse of discretion. *See Flower v. Flower*, 223 Ariz. 531, 535, ¶ 14, 225 P.3d 588, 592 (App. 2010) (division of community assets and liabilities); *Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 9, 160 P.3d 231, 233 (App. 2007) (spousal maintenance). "We view the evidence in the light most favorable to the superior court order and will affirm the judgment if there is any reasonable evidence to support it." *Cullum*, 215 Ariz. at 354, ¶ 9, 160 P.3d at 233. We may infer any findings needed to sustain the judgment, so long as they do not conflict with express findings and are reasonably supported by the evidence. *Wippman v. Rowe*, 24 Ariz. App. 522, 525, 540 P.2d 141, 144 (App. 1975).

¶14 Applying this standard, we conclude the superior court did not abuse its discretion: Contrary to Wife's assertions, the order can be read in a manner consistent with itself and the amended decree.

¶15 We arrive at this conclusion by examining the history of this case and the language of the order. Early in the dissolution proceedings, at a time when Wife alone was occupying the Arizona home, the court ordered *pendente lite* that Husband would be responsible for paying the mortgage and Wife would be responsible for paying the utilities. The dissolution decree entered later provided that "the parties agree that pending the sale of the Arizona Residence, Husband may exclusively occupy the Arizona Residence after allowing Wife a reasonable time to relocate." The decree also provided that "Husband has agreed that at such time as he exclusively occupies the Arizona Residence, he shall be responsible for all the expenses associated with that residence."

¶16 Before Husband moved into the home, however, he asked the court to amend the decree to clarify "that credit will be given to either party who pays more than their share of the legal obligations on the Arizona Residence or the California Residence." The court granted Husband's motion. It found that because the mortgages on the home were community obligations, Husband and Wife each "had a legal obligation to pay one-half of those encumbrances," and amended the decree "to reflect that to the extent that Former Husband has paid more than his legal obligation toward the encumbrances on the Arizona Residence, he shall receive credit at the close of escrow." Because Husband had been making the mortgage payments pursuant to the *pendente lite* order and the decree, the court anticipated Husband would be the party entitled to a credit at the close of escrow: "Therefore, upon the close of escrow, the party (*the Court assumes*

*this will be Former Husband*) who has paid more of the legal obligation will receive a credit." (Emphasis added). Thus, the amended decree clarified that to the extent Husband paid more than his legal obligation on the Arizona home (one-half of the mortgage payments), he would receive a credit at the close of escrow.[3]

¶17        We cannot agree with Wife that the May 22, 2013 order is inconsistent with the amended decree. Contrary to Wife's assertions, the order does not require her to "subsidize" Husband's living expenses while he lived in the home; it merely holds Wife accountable for her legal obligation to pay half the community's debt on the home, regardless of who lives there. As the amended decree clearly provides, each party ultimately was legally obligated for one-half of the debt on the home. To the extent one party paid more than his or her share, that party would receive a credit at the close of escrow. The parties' fundamentally shared legal obligations did not shift depending on who was living in the home. In fact, both received a benefit by living in the home for various periods of time: Wife lived in the home until she moved out pursuant to the decree; Husband then lived in the home (or, at least, he had the right to) without Wife until the home finally sold. By the logic of Wife's current argument, she should have been responsible for the full mortgage payments for the time when she lived in the home without Husband. That was not her argument at the time of the dissolution, however, and, although the superior court could have allocated the community obligation in that manner, it did not do so. Requiring each party to pay one-half of the mortgage on a home they own together as community property does not constitute a clear abuse of discretion. *See Inboden v. Inboden*, 223 Ariz. 542, 544, ¶ 7, 225 P.3d 599, 601 (App. 2010).

¶18        Wife further argues the order renders her spousal maintenance award "illusory." We disagree; the order did not require her to make monthly mortgage payments on the Arizona residence out of her spousal maintenance, but, consistent with the amended decree, only required her to reimburse Husband, at the close of escrow, for any

---

[3]        Wife's attempt to limit the reach of the amended decree to the 45-day period when she was living in the home and also receiving a housing allowance is not convincing. The court did not make Wife responsible for her half of the mortgage payments for only those 45 days; rather, more broadly, it amended the original decree "to reflect that to the extent that Former Husband has paid more than his legal obligation toward the encumbrances on the Arizona Residence, he shall receive credit at the close of escrow."

payments he made in excess of his portion of the community obligation. In reaching this conclusion, we note that Wife's spousal support runs for 108 months, several years beyond Husband's occupancy of the Arizona home, and that the superior court has broad discretion in determining how to allocate debt and property in a divorce proceeding. *See id.* (allocation of debt in dissolution proceeding reviewed for clear abuse of discretion); *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 31, 5 P.3d 911, 917 (App. 2000) (spousal maintenance award reviewed for abuse of discretion).

**¶19** Finally, Wife argues the court erred by failing to hold an evidentiary hearing on Husband's motion to compel reimbursement. We reject this argument because she fails to explain what, if any, evidence she would have offered that would have been relevant to the motion.

**D.    Attorney's Fees.**

**¶20** We have considered both parties' requests for attorney's fees and deny the requests pursuant to A.R.S. § 25-324(A) (2014).

## CONCLUSION

**¶21** For the reasons set forth above, the superior court did not abuse its discretion in entering the May 22, 2013 order.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh